

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN

XXXXXXXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL


Honorable O. P. Lockhart, Chairman
Board of Insurance Commissioners
Austin, Texas

Dear Sir:

Opinion No. O-4735
Re: Does the Board of Insurance
Commissioners have the power
to enforce collection of oc-
cupation tax upon gross pre-
miums from foreign life in-
surance companies and from
similar domestic companies
under facts submitted?

     The material portions of your recent letter in con-
nection with the above question are set out below:

     We desire your opinion as to whether under
these Articles, and any other applicable statutory
provisions, this Board has the power to enforce
collection from foreign life insurance companies,
and from similar domestic companies, of occupation
taxes upon premiums paid upon life insurance pol-
icies issued in favor of officers and men who at
the date of issuance of such policies were and
still are, or subsequently thereto became and still
are, citizens of and domiciled in the State of Texas
and who are serving in military or naval services
of the United States in federal military or naval
areas and elsewhere (a) within Texas and (b) without
Texas; and as to the Board's powers likewise with
respect to such classes of companies upon premiums
collected from policies issued to officers and men
who, at the time of issuance of such policies, were
not and still are not citizens of or domiciled in the
State of Texas but are serving in the military or
naval forces of the United States in federal military
or naval areas and elsewhere in the State of Texas
and who might by virtue thereof be merely residing
temporarily in the State of Texas. Also, as to
whether, and to what extent, this Board has the power
to promulgate and enforce rules and regulations
governing the assessment and collection of premium
taxes in the various situations hereinabove outlined."

The Articles referred to in your letter are Articles 7064a and 4769, Vernon's Annotated Civil Statutes. Article 7064a reads as follows:

"Art. 7064a:

"Every group of individuals, society, association, or corporation domiciled in the State of Texas transacting the business of life, accident, or life and acident, health and accident insurance for profit, or for mutual benefit or protection, shall at the time of filing its annual statement report to the Board of Insurance Commissioners the gross amount of premiums received from or upon the lives of persons residing or domiciled in this State during the preceding year and each of such groups of individuals, society, association, or corporation shall pay an annual tax of five eighths (5/8) of one (1) per cent of such gross premium receipts, provided, however, that this tax shall not apply to local mutual aid associations, or fraternal benefit societies or organizations. Such gross premium receipts so reported shall not include premiums received from other licensed companies for reinsurance, but there shall be no deduction made for premiums paid for reinsurance. If any such group of individuals, society, association, or corporation does more than one kind of insurance business, then it shall pay the tax herein levied upon the gross premium for each kind of insurance written; the provisions of this Act shall not apply to fraternal insurance organizations or societies that limit their membership to one occupation. The report of the gross premium receipts shall be made upon the sworn statement of two (2) principal officers. Deductions from the gross premium receipts shall be allowed any group of individuals, society, association, or corporation of an acquisition cost of all of the first year's premiums, except that on industrial business such companies shall be permitted to deduct one and one half (1½) times the amount of the first year's premiums as acquisition costs. Upon receipt by it of the sworn statements above provided for, the Board of Insurance Commissioners shall certify to the State Treasurer the amount of taxes due by each of such group of individuals, society, association, or corporation, which tax shall be paid to the State Treasurer on or before the 1st of March following and the Treasurer shall issue his receipt therefor as evidence of the payment of such taxes. No such group of individuals, society, association, or corporation shall receive a permit to do business until all such taxes are paid. The taxes aforesaid shall constitute all taxes and license fees collectible under the laws of this State against any such insurance organizations, except the fees provided for under Article 3920, Revised Civil Statutes of Texas of 1925, as amended by Acts of the Forty-second Legislature of 1931,

Chapter 152, Section 1, and no other taxes shall be levied
or collected by any county, city, or town except State, county
and municipal ad valorem taxes upon the real and personal
property of such insurance organizations."

Article 4769 reads as follows:

"Art. 4769:

"Each life insurance company not organized
under the laws of this State, transacting business
in this State, shall annually, on or before the
1st day of March, make a report to the Commissioner,
which report shall be sworn to by either the president
or vice president and secretary or treasurer of such
company, which shall show the gross amount of premiums
collected during the year ending on December 31st,
preceding, from citizens of this State upon policies
of insurance. Each such company shall pay annually
a tax equal to four and sixty-five hundredths (4.65)
per cent of such gross premium receipts. When the
report of the investment in Texas securities, as de-
fined by law, of any such companies as of December
31st of any year shall show that it has invested on
said date as much as thirty (30) per cent of its total
Texas reserves as defined by law, in promissory notes
or other obligations secured by mortgage, deed of trust,
or other lien on Texas real estate and/or in loans
to residents or citizens of Texas secured by the legal
reserve on the respective policies held by such bor-
rowers, the rate of occupation tax shall be reduced
to four and five one hundredths (4.05) per cent; and
when such report shall show that such company has so
invested on said date as much as sixty (60) per cent
of its total Texas reserve, the rate of such tax shall
be reduced to three and six tenths (3.6) per cent; and
when such report shall show that such company has so
invested, on said date, as much as seventy-five (75)
per cent of its total Texas reserve, the rate of such
tax shall be reduced to three and one tenth (3.1) per
cent. All such companies shall, in any event, make
the investments in Texas securities in proportion to
the amount of Texas reserves as required by law. Such
taxes shall be for and on account of the business
transacted within this State during the calendar year
in which such premiums were collected, or for that
portion thereof during which the company shall have
transacted business in this State. This Act shall not
in any manner affect the obligation for the payment of
any taxes that have accrued and that are now due or owing,

but the obligation as now provided by law for the
payment of such taxes shall continue in full force
and effect."

As we understand your letter three separate fact
situations are presented and our opinion is requested as to
the application of each of the above statutes to each of the
fact situations.

In the first situation the premiums are received
from or upon the life of a person who, at the date of issuance
of a policy, was, or subsequently thereto became, a citizen
of, or domiciled in, the State of Texas and so remained unless
the fact that such person is now in the Army of the United
States and stationed in Texas by military authority has
changed his status under the terms used in the above quoted
taxing statutes.

The second situation is exactly the same as the
first except that the person is stationed by military author-
ity at some point outside of Texas.

The rule is generally recognized that a person does
not lose his status as a citizen of Texas or his Texas domicile
merely because he enlists or is drafted into the United States
Army and this is true even though he is stationed by military
authority at some point outside of Texas. Such rule is stated
in Ruling Case Law, Volume 9, page 551 as follows:

"The domicile of a person is in no way affect-
ed by his enlistment or acceptance of employment in
the civil, military or naval service of his country.
He does not thereby abandon or lose the domicile which
he had when he entered the service, nor does he ac-
quire one at the place where he serves. Accordingly,
if one enters the military service and with his regi-
ment goes beyond the limits of the State, remaining
there for some time in such service, he does not be-
come a non-resident of the state. . . ."

It is the opinion of this department and you are so
advised that the premiums involved in both the first and second
fact situations above outlined should be included in computing
the tax levied by Article 7064a and should also be included in
computing the tax levied by Article 4769.

In the third fact situation the premium is received
from or upon the life of a person who, at the date of issuance
of the policy, was, and still is, a citizen of or domiciled
in some state other than Texas, unless the fact that such per-

son is now in the Army of the United States and stationed by military authority in Texas has changed his status within the meaning of the above quoted taxing statutes.

The mere fact that a soldier is stationed by military authority in this State does not make such soldier a citizen of or domiciled in Texas. It is also our opinion that such soldier is not "residing" here within the meaning of that term as used in Article 7064a. In the case of Kinsel et ux v. Pickens, 25 Fed. Sup. 455, the court in considering the question of removing a case to Federal Court made the following statement in connection with the residence of a soldier in the Army:

"(5) However, if there be any question as to this proposition, the Court is of the opinion that the residence spoken of in the statute could not possibly be of the character existing in this case. This man's location here is dependent entirely upon the will of others. He came here under orders and he will leave under orders. Any intention that he may have in the matter must necessarily be qualified by the will of others superior to him in rank. Under the evidence, it will be quite a number of years before he is entitled to retire. In the meantime, he has practically no volition of his own with regard to where he will reside. To hold him to be a resident of Texas with the purview of the removal statutes under those circumstances would be entirely outside the purpose and spirit of the law."

It is the opinion of this department and you are so advised that the premiums involved in the third fact situation above set out should not be included in computing the tax levied by Article 7064a and should not be included in computing the tax levied by Article 4769.

This opinion is limited to the facts herein set out.

It is further our opinion that the statutes themselves provide the procedure for the collection of the tax therein levied. If the Board of Insurance Commissioners desires to promulgate some rule or regulation in connection with such procedure the submission to us of such proposed rule or regulation would be necessary to enable this department to formulate an opinion thereon.

Yours very truly

ATTORNEY GENERAL OF TEXAS


By s/Donald Gay
Donald Gay
Assistant

DG:mp:wc

APPROVED NOV 19, 1942
s/Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

This Opinion Considered and Approved in United Conference